[Civ. No. S. C. 27.   Second Appellate District, Division One.—February 13, 1937.]

WILLIAM ELLIOTT, an Incompetent Person, etc., Respondent, v. JAMES T. AGAJANIAN et al., Appellants.

A. M. Astor and Elmer I. Moody for Appellants.

H. C. Eastham for Respondent.

DESMOND, J., *pro tem.* — This is an appeal, grounded upon claimed error and insufficiency of the evidence, from a judgment ordering defendants to make certain payments to or in behalf of plaintiff which the court found to be due and payable under the terms of a declaration of trust. This declaration was signed October 14, 1927, by plaintiff William Elliott, as trustor, Security Trust & Savings Bank, as trustee, and defendants James T. Agajanian and Albert Edward Holmes, as beneficiaries, as well as by the wives of said beneficiaries. Contemporaneously with the signing of the document, Elliott conveyed to the trustee bank two lots in San Pedro improved with twelve bungalow court buildings. The property at the time was subject to a mortgage for $8,000, liquidated two months later from proceeds of a new trust deed for $10,000, the difference in the two amounts being expended for reduction of street improvement liens and improvement of the buildings. An official of the bank that made the loan testified that the property was appraised at that time at $28,150. One of the defendants testified that

on October 14, 1927, it was worth, exclusive of the twelve buildings, approximately $10,000. The trust agreement provided that the trust estate should consist of the realty that day conveyed to the bank and a fund of $300 cash, then deposited with the trustee by the beneficiaries and which they agreed to maintain continuously in that amount during the existence of the trust. From this cash fund the trustee was to pay to the trustor the sum of $150 per month during his life. The beneficiaries were to be placed in possession of the premises, all income therefrom to be theirs and all charges and expenses attaching thereto, or arising from liens upon the property or from the execution of the trust to be met by them. It was also provided that, "IX. This trust shall wholly cease and determine upon the death of the Trustor, or upon the earlier delivery to the Trustee, for the Trustor, of a fully paid and non-cancellable policy of insurance, issued by an insurance company qualified to do business in the State of California, according to the terms of which policy there shall be paid to the Trustor hereunder by such insurance company an annuity in the amount of One Hundred Fifty ($150) Dollars per month so long as he shall live." And further, "VIII. In the event of default on the part of the Beneficiaries in maintaining the cash assets of this trust in the hands of the Trustee at the sum of Three Hundred ($300.00) dollars at all times during the term hereof as hereinbefore provided, and in the event that sufficient money to make the cash assets of this trust equal the sum of Three Hundred ($300.00) Dollars be not paid to the Trustee by the Beneficiaries, or either of them, within sixty (60) days from and after written notice of an existing deficiency has been mailed to said Beneficiaries or the survivor of them, by registered mail to the last address on file with the Trustee, then upon the expiration of said period of sixty (60) days from and after such mailing of said notice, this trust shall *ipso facto* cease and determine, and the real property hereinabove described shall be by said Trustee conveyed and transferred to the Trustor herein, or his nominee, but without any warranty of title either express or implied, and all moneys at that time constituting a part of the trust estate hereunder, after payment of all sums then due to the Trustor and the Trustee hereunder for fees, costs, expenses or otherwise, shall

be by said Trustee transferred and delivered to the Beneficiaries.''

The beneficiaries took possession of the property and made the payments required to maintain the fund in the hands of the trustee at $300 until February, 1931. No money was ever paid by them to the trustees thereafter, but smaller sums they paid directly to the trustor each month, with the exception of November, 1931, until the trial of this case opened in November, 1933. These payments were in the sum of $75 per month beginning in March and ending in October of 1931, totaling for that period $600, and from December, 1931, to and including November, 1933, in the sum of $25 per month, or $600 for that period.

On March 6, 1931, the trustor had met the beneficiaries at the bank in San Pedro and signed the following document:

"Los Angeles, California, March 6, 1931.

"Messrs. Holmes-Agajanian,

"James T. Agajanian and Albert E. Holmes.

"Gentlemen:      In re: Trust No. 6365.

"You are hereby authorized and instructed to pay into above trust the sum of ($75.00) Seventy-five 00/100 Dollars per month in lieu of ($150.00) One Hundred-fifty 00/100 Dollars per month as called for in original Trust Agreement, and until such time, as the income from property mentioned in said Trust Agreement shall warrant an increase, and that all parties thereto agree that conditions warrant such increase, and that the books or records shall be kept in such manner that the true status of affairs shall be properly shown. It is further understood and agreed that no default shall be taken, and that all other conditions of said Trust be unchanged.

"Yours very truly,

"WILLIAM ELLIOTT.''

This letter was prepared by defendant Albert Edward Holmes, the bank officials advising "that anything we did outside would be all right with them", also "they could not make it a part of their trust agreement", and "they said 'You could do that yourselves.' So we proceeded to do it in the best way we knew how.''

As to the conditions surrounding the preparation of this letter, defendant Holmes testified that "Mr. Agajanian stated

to Mr. Elliott that he did not wish to continue with the deal, he wanted to be released from it, and Mr. Elliott didn't want to give it up. Q. What did you say to him? A. He told me that he would rather he would not give it up, he would rather he would continue with it. He said that he had a lot of confidence in him and that he could get along; . . . and that if Mr. Agajanian would continue the contract he would agree to this reduction to seventy-five, that is, and that is when we went in to the trust officer and explained it to him.'' Thereafter, as has been said, payments in the reduced amount $75 were made, not to the trustee, but to the trustor, until October, 1931. Then in December of 1931, the beneficiaries and trustor again discussed the matter of payments, and by oral agreement, according to the testimony before the court, the amount was reduced to $25 per month. This testimony was admitted on the theory that, since that sum had been paid thereafter continuously until the date of the trial, it was an executed oral agreement, sufficient under section 1698 of the Civil Code to alter the terms of the trust declaration and the letter of March 6, 1931. As to this agreement, the testimony of Mr. Holmes was in part as follows: ''He (Elliott) visited all evening and there was a lot said about it; and he, of course, did not want to reduce it if he didn't have to; but he finally decided that that was the best thing to do. And after making such a decision we drove him down in my machine to the dock, and the last thing that Mr. Agajanian said to him is he was getting out of the contract; he said, 'Well, Mr. Elliott, it is understood that I am to send you $25 per month from now on,' and Mr. Elliott said, 'Yes'; . . . Q. Did Mr. Agajanian say anything about why he could not go ahead with the contract? . . . A. Yes, the reason given by Mr. Agajanian was that the income was not sufficient from the court, and that he had already paid as much money as he could put up to hold his end of it up, and I had not been able to put up any money at all and it was already a burden on him. That was about the main feature, I think.'' ·

Although, according to the testimony, monthly payments of $25 were made to and received by the trustor until November, 1933, the trustee, a few months after those payments began, sent the beneficiaries the following notice:

"Los Angeles, May 26, 1932.
"In re Trust S–6365
"Mr. James T. Agajanian, P. O. Box 855,
"San Pedro, California.
"Dear Sir:

"You are hereby advised that the payments of money specified to be paid by the terms of our Declaration of Trust S–6365 have not been paid, nor have the cash assets of the trust been maintained at the sum of $300.00 as provided by said terms, and we do hereby demand that said default be cured within the period of 60 days from the date of this letter, the failure of which will compel us to proceed with the requirements of Paragraph VIII of the Declaration of Trust, dated October 14, 1927, as they appear upon page 7 thereof.

"Yours very truly,
"C. M. JAY,
"Assistant Trust Officer."

Paragraph VIII, hereinbefore reproduced in part, requires the return of the property to the trustor or his nominee upon the failure mentioned in this notice, but notwithstanding that, the property was not returned and at the time of trial stood in the name of the trustee. ▆ On March 15, 1932, plaintiff's attorney wrote the beneficiaries demanding that all arrears of payments reckoned at $150 per month be paid and that the property be relinquished to plaintiff, and repeated this demand for return of the property, free and clear, except for the $10,000 deed of trust, in a letter of April 10, 1932, no mention being made therein of payments due under the trust agreement. This was followed by the notice from the bank, and then ensued an attempt to settle the difficulties between the parties which, however, came to naught as indicated by the following excerpt from a letter which plaintiff's attorney sent the beneficiaries on July 19, 1932:

"With reference to the pending controversy between yourselves and Mr. William Elliott, my client, I have written to Mr. Elliott the proposal made by Mr. Agajanian to me on the 14th inst., and I am authorized by Mr. Elliott to say that he rejects the same.

"I am further authorized to say that there appears to be due and unpaid, conformable to the terms of the trust agree-

ment between yourselves and Mr. Elliott, a balance of either $1825.00 or $1850.00.

"I am also informed there are unpaid taxes and unpaid street liens against the property.

"This is further to notify you that Mr. Elliott does not desire and will not accept reconveyance of the property covered by said trust agreement, that he intends to and will hold you liable for all sums of money due him under said agreement, . . . "

It will be noted that this letter was sent prior to the expiration of 60 days following notice from the trustee bank that failure to cure default within that time would necessitate retransfer of the property to the trustor. From this it is apparent that the trustor abandoned seasonably any idea he may have had of revoking the trust, and we feel that the trial court committed no error in finding that the trust continued to the time of trial. ■ But, in our opinion, it was a modified trust, that is to say, there had been an effective alteration in the amount to be paid monthly by appellants. Section 1698 of the Civil Code reads as follows: "A contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise." Section 2258 of the Civil Code states that "A trustee must fulfill the purpose of the trust, as declared at its creation, and must follow all the directions of the trustor given at that time *except as modified by the consent of all parties interested*, in the same manner, and to the same extent, as an employee." (Italics ours.) The parties interested in this trust were the appellants, beneficiaries thereunder, and the respondent, trustor. When on March 6, 1931, the trustor wrote a letter to the beneficiaries reducing the required monthly deposit from $150 to $75, the written obligation imposed by the trust was modified to that extent. The trial court, however, found specifically that there was no modification of the original contract or trust agreement, either by the letter or by an executed oral agreement, in fact, finding that there was no such oral agreement as claimed by appellants. With the finding that there was no valid alteration of the trust agreement accomplished by the letter of March 6, 1931, we are in disagreement, and hereby find otherwise. The judgment therefore must be modified.

■ Appellants contend that the court erred in giving judgment for the amount due to the time of trial rather than to the time of filing suit, but the complaint sets out the trust with the requirement that regular monthly payments in a stated amount be made thereunder to plaintiff, and contains a prayer that the court award the amount due at the time of verification, "plus the accruing installments up to the date of the trial of this action". Under these circumstances, the court, in our opinion, was warranted in giving judgment for the amount that had accrued prior to the trial date.

■ After judgment was entered on November 28, 1934, defendants on December 8th served notice of motion for a new trial. On February 6, 1935, sixty days thereafter, the court made its order vacating the findings and judgment and entering amended and supplemental findings and judgment. Appellants complain of this action, but since it was taken within the time allowed for consideration of the motion for a new trial, it was in effect a denial of the motion, and in view of the provisions of section 662 of the Code of Civil Procedure, as amended in 1929, the appellants are in no way thereby aggrieved. (See *Spier* v. *Lang*, 4 Cal. (2d) 711 [53 Pac. (2d) 138].)

The trial court found that the plaintiff was entitled to judgment in the sum of $150 per month from March 15, 1931, to and including November 15, 1933, amounting to $4,800 less the sum of $1200 "already paid and advanced by defendants to plaintiff leaving a balance due the plaintiff on November 16, 1933, of Thirty-six Hundred Dollars ($3,600.00)", and judgment was entered in that amount. The judgment also provided that the defendants "be required to pay all unpaid and owing principal and interest which is a lien against the property described in said Declaration of Trust, together with all taxes and other charges against said property, which are now due and/or payable". By our reckoning the amount due for the period March 15, 1931, to and including November 15, 1933, under the reduction from $150 to $75 per month, would be one-half of $4,800 or $2,400; therefore, giving appellants credit for $1200 paid by them, the amount due plaintiff at the date of trial was $1200.

The cause is remanded to the superior court with instructions to modify the judgment in favor of plaintiff, by re-

ducing the amount thereof from $3,600 to $1200, and as so modified, the judgment is affirmed.

Houser, P. J., and York, J., concurred.